SIMEON CHANDLER *vs.* MICHAEL HOWLAND & others.

In an action by the owner of an ancient mill against the owner of a more modern mill above on the same stream, for disturbing the flow of the water, the jury were instructed that the defendant was liable for an unreasonable use or unreasonable detention of the water to the prejudice of the plaintiff, and was bound, in exercising his right as owner of a mill above, to permit the water to run to the plaintiff's mill as he was accustomed to have it in its natural flow, "subject, of course, to those slight and substantially immaterial obstructions and retardations which necessarily result from exercising the right of a mill privilege above." *Held,* that the defendant had no ground of exception.

A miller, employed by the owner of a mill, to take charge of and tend the mill, receiving in compensation half the profits of the mill, but without any agreement for any definite time, has no such title or possession as to require him to be joined in an action by the owner for an injury to the mill.

ACTION OF TORT by the owner of an ancient mill on Herring Brook in Pembroke, against the owners of a more modern mill above on the same stream, for raising and keeping up a dam, and thereby retaining the water and preventing it from flowing down to the plaintiff's mill.

At the trial before *Dewey,* J., the plaintiff gave in evidence two awards of referees, made under a rule of court in cross actions between the then owners of these two mills, and accepted by this court at October term 1851, which are not material to be stated.

Much evidence was introduced by each party upon the question of the detention of the water and the consequent damage to the plaintiff's mill; and upon this branch of the case the court instructed the jury "that it was the duty of the defendants so to use the water as not to injure the plaintiff, who was a mill-owner below, in the enjoyment of the same water according to its natural course; that if there was an unreasonable use or an unreasonable detention of the water by the defendants, to the prejudice of the plaintiff, the defendants were answerable in damages; that, in exercising the right of mill-owners above, the water is to be permitted to run to the plaintiff's mill as he was accustomed to have it under the natural flow, subject, of course, to those slight and substantially immaterial obstructions and

retardations which necessarily result from exercising the right of a mill privilege above."

John Butterworth, a witness called by the plaintiff, testified that during the whole time for which the plaintiff claimed damages " he was miller for the plaintiff; that he had charge of the mills and tended them, and had one half of the earnings thereof for tending them; that the plaintiff kept the mills in running order, furnished the files, oils and all articles necessary for keeping the mills in running order, and had the other half of the earnings; that Simeon B. Chandler, the plaintiff's son, worked with the witness, but the witness did not hire him, and the witness and said Simeon B. went shares in one half of the earnings of the mill, and shared alike; that the witness had no concern with the running of the mill in the night time, nor did he agree with the plaintiff about running the mill at night; that the plaintiff's son had help in running the mill in the night time; that the witness had no concern with it; that his agreement was never reduced to writing; that he never agreed to stay at said mills for any particular length of time, but had a right to quit at any time he pleased; that he took the mills upon shares; that he was to have one half the earnings, and Chandler the other half."

Upon this evidence, the defendants contended that the plaintiff's mill was in possession of Butterworth during the time in question, and that there was not sufficient evidence of possession by the plaintiff to warrant the jury in returning a verdict for the plaintiff for all the damages. But the court ruled and instructed the jury otherwise. The jury returned a verdict for the plaintiff with one dollar damages, and the defendants alleged exceptions.

*E. Wilkinson*, for the defendants.

*E. Ames*, for the plaintiff.

DEWEY, J. The ruling of the presiding judge, upon the trial of the present case, may, in the opinion of the court, be sustained upon general principles applicable to riparian proprietors, and without supposing any new rights to attach to the mill privilege below, as the effect of the awards of the referees.

The doctrine of the most recent case on this subject requires the owner of the upper mill to use the water in such manner that every riparian proprietor, at points further down the stream, shall have the enjoyment and use of it substantially according to its natural flow, subject to such interruption as is necessary and unavoidable by the reasonable and proper use of the mill privilege above.    *Thurber* v. *Martin*, 2 Gray, 394.

The case put to the jury was, that for an unreasonable use or an unreasonable detention of the water by the owner of the mill privilege above, the jury would give damages, but not for those obstructions or retardations which necessarily result from exercising the right of a mill-owner above.   In the description of such obstructions, as being "slight and substantially immaterial," if those words had been used alone as the test of the question of liability, they might have been objectionable, and perhaps calculated to mislead the jury.   But they were not so used, or susceptible of such construction, when taken in their proper connection.   The jury were instructed that it was for the unreasonable use, or unreasonable detention of the water, by the defendants, that damages were to be given.   They were further instructed, that the water was to be permitted to run to the plaintiff's mill as he was accustomed to have it under the natural flow, but subject "to those slight and substantially immaterial obstructions which necessarily result from exercising the right of a mill privilege above."   The obstructions and retardations of the water, for which the defendants were not responsible, were stated to be those necessarily resulting from the proper exercise of the mill privilege above.   For any damages thus occasioned they were not held responsible.   This distinctly marked the character of the obstructions to which the right to a continuous flow of the water was subject, and the rule of law applicable to the case.

As to the further question raised at the trial, of the right of the plaintiff to maintain the present action, his right to recover a moiety of the damages is quite clear.   Taking the case most strongly against the plaintiff, it was only a case of joint interest in the profits of the mill, the plaintiff having one half.   This

would enable the plaintiff to maintain the action and recover his costs.

As to the further right to recover the whole damages in his own name, the only question would be whether the plaintiff should have judgment for the sum of one dollar, or for half of that sum. This is certainly more questionable; but we think, upon the whole evidence, the plaintiff is to be taken to have been in the legal possession of the mill, and Butterworth in his employment as his miller, under an agreement that he should have one half of the earnings of the mill for tending the same. Butterworth was miller to the plaintiff, and not lessee of the mill. There was no lease, no agreement for any particular time, in which Butterworth was to be employed in the mills, or have any interest in the income of them. An agreement, by which the laborer is to receive a certain share of the profits in lieu of wages, does not necessarily constitute him a joint owner or partner, so as to require him to be joined as a plaintiff in a suit in reference to the property, in a share of the profits of which he is thus concerned. *Rice* v. *Austin*, 17 Mass. 205. *Baxter* v. *Rodman*, 3 Pick. 435.                *Exceptions overruled.*